**Tagged opinion**

ORDERED in the Southern District of Florida on June 5, 2008



John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

**CARLOS RAMON CASAVALENCIA,**

Case No. 07-20115-BKC-JKO

Chapter 13

Debtor.
_____/

### ORDER DISMISSING CHAPTER 13 CASE FILED IN BAD FAITH

Four creditors of the Debtor, Carlos Casavalencia, moved to dismiss this case as a bad faith chapter 13 filing, for relief from the automatic stay so that they may continue with prepetition litigation against the Debtor, and for the award of attorneys' fees and costs. Because I am satisfied that the Debtor's prepetition conduct toward these four creditors was willfully and egregiously fraudulent, I conclude that no chapter 13 plan could possibly be filed by this Debtor which satisfies the good faith requirements of 11 U.S.C. § 1325(a)(3). I will therefore dismiss this chapter 13 case with prejudice. Because of that result, the creditors' motion for stay relief will be denied as moot,

although in any other circumstance I would grant it. Finally, I will award attorneys' fees and costs to the creditors' counsel.

The Debtor, Carlos Ramon Casavalencia, consistently held himself out to the four creditors as "Carlos Valencia" or "Carlos Casa Valencia." After listening to the creditors' testimony and the Debtor's testimony and assessing the witnesses' credibility, I am satisfied that the Debtor filed this bankruptcy petition in the name "Carlos Casavalencia" in an effort to mislead his creditors and the court.

Movant Angel Rivera is a full-time student pursuing an engineering degree who met the Debtor on a yachting trip out of the exclusive CocoPlum section of Coral Gables. The Debtor held himself out to Mr. Rivera as a real estate investor and, during the giddy real estate market of 2005 – 2006, promised Mr. Rivera that money invested through him in his business, Money Investments & Business, Inc., would return a 6-10% monthly return.[1] The methodology employed by the Debtor was to deliver checks to the creditors when they invested funds postdated one month later and payable in an amount ranging (depending on the specific agreement) 4% to 10% higher than the invested amount. When the postdated checks matured, the Debtor undertook to entice the creditor involved to roll the amount over in exchange for a new postdated check in an amount equal to the new principal plus future interest. Sometimes an investment return was paid at the time of the rollover; sometimes it was not.

---

[1] Although the Debtor sought to characterize the investments made by the four creditors, including Mr. Rivera, as "loans," thereby seeking a determination that the debts owed to them were unenforceable as usurious, I find that the Debtor's testimony in that regard was not credible and expressly find that the funds invested by the creditors in the Debtor's schemes were investments, not loans.

Under this scheme, Mr. Rivera initially invested $15,000; his personal investment ultimately reached a principal balance of $90,000, with the largest portion of those funds coming from the refinancing of his homestead. Mr. Rivera and his family and friends invested an aggregate amount of $480,000 in the Debtor's scheme.

When Mr. Rivera sought repayment of these funds, the Debtor falsely represented to him that he could not return them because of an ongoing FBI money laundering and tax evasion investigation. Some three months later, after repeated promises to pay back the investments, the Debtor finally delivered a promissory note to Mr. Rivera. After making three payments of $6,000 each on the note, the Debtor defaulted.

Movant Dennis Reilly is a former New York City firefighter who was forced to retire on disability as a result of severe lung damage received during the aftermath of the September 11, 2001, terrorist attack on the World Trade Center. A physical education major who formerly taught special education students, Mr. Reilly met the Debtor (who held himself out to be "Carlos Valencia") as a result of serving as personal trainer for four members of the Debtor's family. Mr. Reilly, his wife, and the Debtor and various members of the Debtor's family socialized together. After five or six months, Mr. Reilly was induced to invest in the Debtor's scheme, promised a 4% monthly return on funds invested. In all, Mr. Reilly invested a principal balance of $70,000, of which only some $8,000 was ever repaid despite repeated and elaborate promises of repayment. Mr. Reilly's health has been severely effected by the fraud perpetrated on him by the Debtor.

Movant Karmen Adame now works as a bartender. She came to the United States from Mexico 22 years ago, and came to know the Debtor while working as a personal trainer at the same facility which employed Mr. Reilly. The Debtor eventually employed her on salary at his business

called Handyman for Rent, in which the Debtor spent money acquiring equipment, etc., but never actually did any handyman work. The Debtor persuaded Ms. Adame that he owned various overseas businesses, including bail bond and property investment businesses. At about the time she began to work for the Debtor at Handyman for Rent, she invested $20,000 of her savings with him and was promised a 4% monthly investment return. She later refinanced her apartment and invested an additional $150,000. She eventually asked for all of her money back in October 2007; the Debtor asked for a month to pay her back "and then everything exploded." Her total repayment from the Debtor was $4,000 of the original $20,000 and none of the subsequent $150,000.

Movant Giaconda Diaz, who now operates a cleaning and maintenance company, met the Debtor through Karmen Adame. The Debtor represented to her that he invested in foreclosed properties acquired from area banks and the FBI, and that his ability to flip the properties at a substantial profit enabled the 6% monthly investment returns he promised her. Ms. Diaz invested $20,000 in July 2007 and another $30,000 in August 2007; the total amount ever paid back to her was $1,400.

The Debtor himself testified extensively. He acknowledged that he had failed to list on his bankruptcy schedules a property he owned located at 10781 Cleary Boulevard in Plantation, Florida, on the ostensible (and not credible) basis that "the property is in foreclosure." He had represented in acquiring that property in January 2006 that he was married to Maribel Echevarria, whom he acknowledged at trial he had married in 2004, and to whom he is still married, but listed himself in his bankruptcy petition as a single man. Curiously, he had held himself out to Mr. Rivera, Mr. Reilly, and Ms. Adame as married to Emma Valencia, the mother of his children, from whom he had long since been divorced.

The Debtor failed to list a 2007 BMW 745li, purchased in May 2007, on his bankruptcy schedules. He testified at trial that it had been repossessed by BMW – but then acknowledged that he still had possession of the car as of the date of trial.

The Debtor acknowledged that he has failed to file tax returns for the calendar years 2005, 2006, and 2007.

The Debtor acknowledged at trial that funds received from Ms. Adame were used to buy trucks, construction equipment, tools and supplies for Handyman for Rent, but that he had "lost everything from it." Although Ms. Adame testified that he had told her that he used investors' money to buy foreclosure properties, he claimed at trial that he had merely been retained by several banks to repair such properties. When asked to identify the banks, he stated that "I don't have it here."

Finally, the Debtor acknowledged at trial that he was never licensed to sell securities by the State of Florida or by the Securities & Exchange Commission.

I am satisfied on the basis of the evidence presented that the Debtor engaged in a deliberate fraudulent scheme to sell securities to Mr. Rivera, to various friends of his and to members of his family; to Mr. Reilly; to Ms. Adame; and to Ms. Diaz. His actions in doing so were part of a deliberate plan to defraud these victims, were based upon false representations, and were undertaken in gross violation of the securities laws of the United States and of the State of Florida. Carlos Casa Valencia is nothing more than a thief who preyed upon hard working victims. His actions in respect of these Movants were despicable.

There is an inherent requirement of good faith in chapter 13 cases. *Marrama v. Citizens Bank of Massachusetts*, __ U.S. __, 127 S.Ct. 1105 (2008); *In re Kitchens*, 702 F.2d 885 (11th Cir.

1983). This Debtor's conduct is the direct antithesis of good faith. He is under no set of circumstances entitled to relief under a statute which requires good faith. Accordingly, this case will be dismissed.

The Movants' request for stay relief so that they could complete state court litigation is moot, since the dismissal of this case will permit them to take such legal action as they deem appropriate.

Finally, it is appropriate to award attorneys' fees and costs to the Movants' counsel, Justin Bennett, Esquire, as a sanction for the many false declarations made by the Debtor, starting with his misleading nomenclature as "Carlos Ramon Casavalencia" and continuing in the misstatements and falsehoods contained in the Debtor's schedules regarding his assets. The Debtor's bankruptcy filing was a deliberate abuse of the bankruptcy system and his petition was filed for improper purposes. Accordingly, sanctions against the Debtor are appropriate. *In re Conrad,* 279 B.R. 320 (Bankr. M.D. Fla. 2002). I specifically find that the Debtor's bankruptcy petition was filed in bad faith and that both the Debtor and his counsel, Carlos A. Santos, II, Esquire, are responsible for that bad faith. No reasonable or responsible lawyer could have filed a petition and schedules so replete with misstatements if that lawyer had done anything approaching the "reasonable inquiry" requirements of Federal Rule of Bankruptcy Procedure 9011. Moreover, as a "debt relief agency" within the meaning of 11 U.S.C. § 101(12A), that is, a person "who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration," Mr. Santos was enjoined under 11 U.S.C. § 526(a)(2) as follows:

### § 526 Restrictions on debt relief agencies

(a) A debt relief agency shall not –

> (2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue and misleading, or that upon the exercise of reasonable care, should have been know by such agency to be untrue or misleading.

The falsehoods contained in the petition and schedules filed here were untrue and misleading and at least some of them (particularly including the Debtor's nomenclature) would have been known to Mr. Santos "upon the exercise of reasonable care." I find that Rule 9011 and 11 U.S.C. §§ 105(a) and 526(a)(2) provide the basis for the award of such sanctions. *Id.; In re IAMEC Funding, Inc.*, 236 B.R. 490 (Bankr. M.D. Fla. 1999).

I also base my determination to impose sanctions on the Debtor and Mr. Santos on the inherent power of a federal court to impose sanctions upon a finding of bad faith. *Chambers v. NASCO*, 501 U.S. 32 (1991); *In re Mroz*, 65 F.3d 1567 (11th Cir. 1995).

Mr. Bennett seeks fees for 37.55 hours at the hourly rate of $225, aggregating $8,448.75. I find both the hours spent on this engagement and the hourly rate to be reasonable, and will award fees in that amount. I find that the expenses incurred by Mr. Bennett in the aggregate amount of $290.81 were reasonable and necessary, and will award the costs as part of the sanctions award.

I note that Mr. Bennett is a young lawyer, admitted to The Florida Bar in late 2005. His performance in this case was exemplary and in the highest traditions of the bar and was at a level of written and oral advocacy far exceeding his years in practice.

Based upon all of the foregoing, it is ORDERED:

1. The Debtor's chapter 13 case is hereby DISMISSED with prejudice to the filing of a bankruptcy case in any Court in the United States for a period of three years from the date hereof.

2. The Movants' request for stay relief is hereby DENIED as moot.

3. Sanctions are hereby awarded against the Debtor Carlos Ramon Casavalencia, a/k/a Carlos Ramon Casa Valencia, a/k/a Carlos Casa Valencia, and against Carlos A. Santos, II, Esquire, jointly and severally, in the amount of $8,739.56. These sanctions shall be paid to Justin B. Bennett, Esquire, within thirty days of the date hereof, with a notice of compliance filed by Carlos A. Santos, II, Esquire, in this case. In the event that the sanctions awarded are not timely paid, the Movants are DIRECTED to so advise the Court and are authorized to seek such further relief from this Court as they deem appropriate.

4. The Court retains jurisdiction to enforce the terms of this Order and to grant such further relief as is appropriate to carry out the terms hereof.

###

Copies to:

Justin B. Bennett, Esquire, by CM/ECF

Carlos A. Santos, II, Esquire
2250 S.W. 3rd Avenue, Suite 303
Miami, FL 33129

Office of the United States Trustee, by CM/ECF

Mr. Bennett is hereby directed to serve a copy of this order on all parties in interest and to file a certificate of service.

I:\ORDERS\07-20115 Casavalencia.dism.wpd